**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abir Qafisheh, | No. CV-18-00133-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Abir Qafisheh brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises four issues on appeal: 1) the Administrative Law Judge ("ALJ") erred by finding Plaintiff's anxiety and depression non-severe and not including any mental health limitations in the residual functional capacity ("RFC") assessment; 2) the ALJ gave inappropriate weight to the treating physician opinion; (3) the ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony; and 4) the ALJ failed to resolve a conflict between the vocational expert ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. 16).

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 16, 20, & 21). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. The Court finds that the ALJ erred in finding Plaintiff's mental impairments were not severe at Step Two of the evaluation

process and failing to include any nonexertional limitations in the RFC assessment. This error was not harmless, and the Court will remand this matter for further administrative proceedings.

**I.   Procedural History**

Plaintiff filed a Title II application for social security disability benefits on July 28, 2014 and a Title XVI application on November 30, 2016. (Administrative Record ("AR") 447, 488). Plaintiff alleged disability beginning on June 9, 2012 based on depression, back injury, knee injury, fibromyalgia, arthritis, pancreatitis, and hepatitis C. (AR 342). Plaintiff's application was denied upon initial review (AR 341) and on reconsideration (AR 354). A hearing was held on November 30, 2016 (AR 291), after which ALJ Yasmin Elias found, at Step Four, that Plaintiff was not disabled because she could perform her PRW as a waiter. (AR 38). On July 28, 2017 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 12).[1]

Plaintiff's date last insured ("DLI") for DIB purposes is December 31, 2015. (AR 342). Thus, to be eligible for benefits, Plaintiff must prove that she was disabled during the time period of her alleged onset date ("AOD") of June 9, 2012 and her DLI of December 31, 2015.

**II.   Factual History**[2]

Plaintiff was born on July 10, 1961, making her 50 years old at the AOD of her disability. (AR 342). She has one year of college and past relevant work as a caterer helper and a waiter. (AR 473).

A.   <u>Treating Physicians</u>

On November 5, 2014 Plaintiff had a crisis assessment at Pasadera Behavioral Health. (AR 1124). Plaintiff reported depression, anxiety, isolating, overeating, fear of leaving the house, stomach problems and frequent urination due to anxiety, and nightmares.

---

[1] Plaintiff filed a subsequent application for Title XVI benefits on November 6, 2017 based on a new condition. Plaintiff was diagnosed with Stage IVB liver cancer on November 19, 2018, and on December 11, 2018 the ALJ issued a fully favorable decision. *See* Doc. 22.
[2] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to the Court's decision on Plaintiff's claims on appeal.

Plaintiff stated that two weeks prior a child she babysat drowned and now she has a panic attack every time she sees the pool. Plaintiff also reported a history of childhood molestation and emotional abuse. Plaintiff was described as clearly depressed, frequently tearful, and had difficulty with receptivity to feedback. (AR 1126). She was also noted to be restless and anxious and frequently excused herself to use the restroom. Plaintiff was diagnosed with anxiety disorder and depressive disorder with a GAF of 45 and was referred to COPE Community Services. (AR 1127–28).

On November 7, 2014 Plaintiff had a psychiatric evaluation at COPE. Her affect was anxious, her mood was anxious and depressed, and she was crying. (AR 1141). She was observed to be very emotional and crying, dressed in pajamas, and had an odor of urine. (AR 1312). Plaintiff described worsening anxiety, depression, and panic over the last year, with severe symptoms for the last 3-4 months. (AR 1141). She was treated for depression and anxiety 10 years prior but recently had a traumatic event that set her back when the neighbor child she cared for drowned. (AR 1167, 1312). She reported feeling hopeless and worthless, had low energy, nightmares, and had anxiety about being out of the house, in crowds, and waiting in line. (AR 1141). Plaintiff also reported a history of abuse and rape. (AR 1141, 1161). The diagnosis was major depressive disorder, generalized anxiety disorder, and PTSD. (AR 1168). Plaintiff was prescribed Citalopram and referred for therapy. (AR 1142).

COPE progress notes document the following:

On December 30, 2014 Plaintiff was anxious, depressed, shaking, and crying. (AR 1139, 1317). She reported that nightmares were a primary concern and she had them most nights; she was afraid to go out after dark; she had odd experiences attributed to possibly picking up a spirit after the child's death; and she was forgetful and isolating. (AR 1139, 1317). Plaintiff's PTSD, depression, and anxiety were documented as worsening, and her social phobia was stable or improved. (AR 1140). She was prescribed Prazosin for nightmares and Citalopram was increased. (AR 1148, 1186, 1316).

On December 31, 2014 Plaintiff reported she was afraid of the dark, that someone

was watching her when she was sleeping, she heard scratching noises in the wall, things were appearing and disappearing, and she heard voices trying to harm her. (AR 1319).

On February 4, 2015 Plaintiff was seen for a therapy assessment. (AR 1329). Plaintiff reported that she was in the hospital for a week following a recent overdose and given diagnoses of possible pancreatitis, seizure, and heart attack or stroke. Plaintiff had an anxious and euthymic mood and was anxious to receive help.

On February 10, 2015 Plaintiff reported experiencing anxiety and depression 7/7 days per week. (AR 1331).

On March 13, 2015 Plaintiff reported a lot of social anxiety symptoms, avoiding social interaction, and was unable to leave her home. (AR 1335, 1337). She was depressed and her affect was restricted. (AR 1335, 1337). She had nightmares and stated the boy's spirit was moving things in her house and she heard scratching in the walls and got up constantly at night to see if a cat was stuck behind the dresser. (AR 1337).

On April 28, 2015 Plaintiff reported having difficulty leaving the house and feeling nervous about everything. (AR 1344).

On May 5, 2015 Plaintiff stated there were ghosts in her apartment; she was afraid to sleep in her bedroom because she heard noises and felt something on the bed; she had nightmares and difficulty sleeping through the night; anxiety about leaving the house; and fearfulness of attending therapy groups. (AR 1345).

On May 7, 2015 Plaintiff reported she continued to feel depressed and anxious daily and wanted to feel better so she could start leaving the house. (AR 1348).

On May 22, 2015 Plaintiff was anxious and tearful, reported increased anxiety and needing hours to prepare herself to leave the house, and had nightmares and difficulty sleeping. (AR 1350).

On June 9, 2015 Plaintiff reported not feeling well due to lack of sleep due to nightmares, anxiety about being out of the house, and fatigue. (AR 1351). She was depressed and anxious and reported scratching in her walls, difficulty sleeping due to fear of spirits, leaving the TV and lights on all night, and finding doors that she had locked were

unlocked.

On June 12, 2015 Plaintiff reported nightmares, hearing voices, and was afraid to leave the house. (AR 1353). She was observed to be disheveled and anxious with blunt affect. A prescription for Olanzapine was added. (AR 1354).

On July 7, 2015 Plaintiff stated she couldn't get out of bed due to depression. (AR 1356).

On July 21, 2015 Plaintiff was anxious and depressed and reported feeling hopeless, sad, paranoia, and difficulty leaving the house. (AR 1358).

On September 1, 2015 Plaintiff felt things hadn't improved: she slept sporadically, woke every hour, slept on the couch because she was afraid to go in her room, had panic attacks when going outside and isolated at home, and wasn't doing any housework or anything she enjoyed. (AR 1362).

On October 13, 2015 Plaintiff reported she tried to sleep in her room for a few days but she was seeing and hearing ghosts. (AR 1364).

On December 9, 2015 Plaintiff reported an increase of vivid dreams that made her feel disconnected and unsure of what was real; short-term memory loss; difficulty leaving the house; irritation; and lack of energy. (AR 1368). Plaintiff was observed to be depressed as evidenced by tearfulness, lack of energy, rumination on negative self-worth, and self-report of sleeping.

On December 14, 2015 Plaintiff had elevated levels of anxiety, depression, and insomnia; was avoiding sleeping in her bedroom because of hearing voices; had vivid dreams; and did not want to leave the house. (AR 1369).

On February 4, 2016 Plaintiff reported nightmares and feeling afraid, unsafe, and that people were out to get her. (AR 1376). Plaintiff's symptoms and functioning were documented as improved and she reported increasing the number of times she left the house.

On March 3, 3016 Plaintiff stated she wanted to put therapy on hold because her dad was ill and she needed to take care of him. (AR 1379). On March 10, 2016 Plaintiff

reported she was doing well. (AR 1380).

At a March 29, 2016 service plan meeting at COPE, Plaintiff reported feeling depressed and anxious 7/7 days per week. (AR 46).

Anxiety and depression were also observed by Plaintiff's treating physician, Dr. Subbureddiar, on multiple occasions. *See* AR 595 (chronological index of evidence).

B.  State Agency Consulting Physicians

On January 19, 2015 Plaintiff saw Dr. Johnson for a psychiatric consultation. (AR 1265). Plaintiff reported seeking disability based on fibromyalgia, back injury, left shoulder pain, and extreme anxiety, and described a six-month history of anxiety and depression. She was enrolled with COPE for the past three months and taking Citalopram and Prazosin. (AR 1266). On exam, Dr. Johnson noted Plaintiff's general attitude was cooperative and friendly, her eye contact was good, and her mood was mildly depressed with affect appropriate to mood state. Plaintiff reported a history of symptoms dating back ten years and said they returned recently after the drowning death of a child she babysat and the death of her ex-husband. Plaintiff reported anxiety, paranoia, low energy and motivation, social withdrawal, decreased concentration, and worry about ending up in a wheelchair. (AR 1266–67). Dr. Johnson assessed anxiety disorder and opined that Plaintiff's anxiety likely developed because of her chronic health problems and was aggravated by psycho-social stressors. (AR 1267). She opined that based solely on Plaintiff's present levels of psychological and cognitive function, Plaintiff's prognosis for a successful return to the workforce was good, and that Plaintiff did not have a condition that would impose limitations for 12 continuous months. (AR 1267–68). Dr. Johnson did not review Plaintiff's mental health records from COPE. (AR 1267).

C.  Plaintiff's Testimony

The initial disability determination form notes that when Plaintiff was asked about her depression, Plaintiff stated that her daughter filled out the form and listed depression without asking her. (AR 345). Plaintiff stated she felt awful physically and was depressed about not being able to do the things she used to do, but that she did not have actual

depression. (AR 345). On reconsideration, Plaintiff reported that depression had become a daily problem, that she was giving up hope, had worsening fears and paranoia, and little motivation to leave the house. (AR 356, 539).

On a function reported dated September 24, 2014 Plaintiff reported she had problems sleeping due to bad dreams. (AR 510). On a function reported dated December 24, 2014 Plaintiff reported anxiety caused her to have nightmares nightly and that she could only sleep two hours at a time. (AR 546). She further reported that she did not do housework or go outside due to depression and anxiety, did not like to be around a lot of people, did not handle stress well, and was fearful of leaving her house. (AR 548, 551).

On a disability report dated March 5, 2015 Plaintiff reported that she was unable to be around a lot of people and that she avoided public places and only left her home if she had to. (AR 366). On a disability reported dated November 30, 2016, Plaintiff reported receiving therapy and medication management at COPE for anxiety, depression, panic attacks, and agoraphobia. (AR 477).

At the hearing before the ALJ, Plaintiff testified that she takes a lot of anxiety medication, that she does not have the patience to read a book or be in line at the grocery store, she has a hard time leaving the house, and she can't go somewhere where there are too many people or she feels like she's boxed in. (AR 306). She does not drive because she gets confused and panics in traffic. (AR 307). When she tries to leave her apartment, she gets full blown anxiety and it takes her an hour or two to talk herself into leaving. (AR 311).

Plaintiff feels very depressed and has had traumatic events in her life including a friend that committed suicide and a neighbor child that she used to babysit who drowned on a day she was supposed to watch him. (AR 311). She hears the voice of the little boy in her room; she hears her name whispered and things brushing against her neck; she thinks he is playing tricks on her and blames herself for his death. (AR 313). Plaintiff has bad dreams that give her anxiety and wake her up, and she can't sleep in her bedroom anymore because she feels there are ghosts or spirits in there. (AR 312–13). Plaintiff takes

medication for hallucinating and bad nightmares, but the doctor is going to increase her dose because it isn't working. (AR 313). She does not have thoughts of suicide, but of despair and that her life is over. (AR 316).

In January 2015 Plaintiff had an overdose and was in intensive care, but she denied that she tried to take her life. (AR 312). She stated that the empty pill bottles the EMTs found around her were there because she does not discard her empty bottles right away. (AR 314).

A letter written on Plaintiff's behalf by her landlord states that Plaintiff is extremely anxious and lashes out at people, her neighbors and family no longer talk to her, she has nightmares, and is extremely paranoid and delusional and has trouble leaving the house. (AR 49–50). She often finds herself locked in her room or a public restroom crying and avoiding people. (AR 50). A postscript from the landlord states that it took several days to compose the letter because of Plaintiff's ranting and raving and her impatience with not being able to concentrate.

### D. Vocational Testimony

At the hearing before the ALJ, Elena Sala testified as a vocational expert. She stated that Plaintiff's past work as a waiter and caterer helper was classified as light. (AR 329).

The ALJ asked Sala to assume an individual with Plaintiff's education and work experience who could perform light work with the following limitations: never climb ladders, ropes, or scaffolds, and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. (AR 330). Sala testified that such a person could do Plaintiff's past work as a caterer and waiter. (AR 330). For the second hypothetical, the ALJ added a limitation to occasional overhead reaching with both upper extremities. (AR 331). Sala testified that such a person could not do the caterer helper job because it required frequent reaching, though the job did not specify whether it was above head reaching. (AR 331). The ALJ then clarified that she meant no reaching above shoulder level, and Sala stated that the caterer helper job would be eliminated but a person could still do the waiter job. (AR 331). For the third hypothetical, the ALJ added a limitation to simple, unskilled work with only

occasional contact with the public and coworkers. (AR 331). Sala testified Plaintiff's past work could not be performed but that she could perform other jobs including shipping and receiving weigher, router clerk, and mail clerk. (AR 332–33).

On questioning by Plaintiff's attorney, Sala testified that if there was a limitation to occasional reaching in general, not just overhead reaching, that would eliminate Plaintiff's PRW and the jobs of mail clerk and shipping and receiving. (AR 334–36). Sala further stated that the limitation for overhead reaching would only eliminate the caterer helper job because waiters don't do overhead reaching, and if they do, it would be less than occasional. (AR 334). If a limitation to sedentary work was added to the ALJ's third hypothetical, there would be no jobs available for Plaintiff. (AR 337).

E. ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of degenerative disc disease, chronic liver disease, chronic cholecystitis, chronic pain syndrome with narcotic dependence, and impingement/tendinitis of the left shoulder. (AR 26).

The ALJ found that Plaintiff's anxiety disorder and affective disorder were not severe because they caused no more than minimal limitations on her ability to perform basic mental work activities. (AR 27). The ALJ also considered the Paragraph B criteria set out in the social security disability regulations for evaluating mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.[3] The ALJ found Plaintiff had mild limitation in understanding, remembering, or applying information and would have would have mild

---

[3] Mental impairments are evaluated using the technique outlined in 20 C.F.R. § 404.1520a. The Commissioner must first evaluate the claimant's symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b). If the Commissioner determines that the claimant does have a medically determinable mental impairment, the Commissioner must specify the findings that substantiate the presence of the impairment, and then rate the degree of functional limitation resulting from the impairment. *Id*. The Commissioner considers four areas of functional limitation: ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation is rated as none, mild, moderate, marked, or extreme. *Id*. The Commissioner then determines the severity of the mental impairment. 20 C.F.R. § 404.1520a(d). If the Commissioner rates the degree of limitation as "none" or "mild," the Commissioner will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. *Id*.

limitation with tasks such as following one or two step oral instructions, asking and answering questions, and using reason and judgment to make work-related decisions. (AR 27). The ALJ also found Plaintiff had mild limitations in interacting with others regarding tasks such as cooperating with others, asking for help, and responding to requests. The ALJ further found that Plaintiff had mild limitations in concentration, persistence, or maintaining pace, and would have no more than mild limitation with tasks such as working at an appropriate and consistent pace, changing activities, and completing tasks in a timely manner. Finally, the ALJ found Plaintiff had mild limitation in adapting or managing oneself and would have no more than mild limitation with tasks such as responding to demands, setting realistic goals, and maintaining personal hygiene and attire appropriate to a work setting. (AR 27–28).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record, and thus the statements affected her ability to work "only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (AR 34).

The ALJ gave great weight to the state agency medical consultants who opined that Plaintiff did not have a severe mental impairment because they are "highly qualified physicians and psychologists who are experts" in evaluating SS disability claims. (AR 29). The ALJ also gave great weight to CE Dr. Johnson's opinion because the opinion was "consistent with the claimant's mental health treatment records as a whole, which reveal grossly conservative mental health treatment." (AR 29).

The ALJ found that Plaintiff had the RFC to perform light work with the following limitations: never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, or crawl; and occasionally reach above shoulder level bilaterally. (AR 30). The ALJ determined Plaintiff could perform her PRW as a waiter. (AR 38). The ALJ therefore concluded Plaintiff was not disabled. (AR 38).

. . .

### III. Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.920, 416.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4).

Here, Plaintiff was denied at Step Four of the evaluation process. Step Four requires a determination of whether the claimant has sufficient RFC to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as that which an individual can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. A RFC finding is based on the record as a whole, including all physical and mental limitations, whether severe or not, and all symptoms. Social Security Ruling (SSR) 96-8p. If the ALJ concludes the claimant has the RFC to perform past work, the claim is denied. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The

Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citations omitted). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

. . .

### IV. Discussion

Plaintiff argues that the ALJ erred by failing to find that her depression and anxiety were severe impairments, and by failing to include any mental health limitations in the RFC. Plaintiff also argues that the ALJ erred by assigning little weight to Dr. Subbureddiar's treating physician opinion and by failing to give clear and convincing reasons to discount her subjective symptom testimony. Finally, Plaintiff argues that the ALJ failed to resolve a conflict between the VE's testimony and the DOT regarding whether Plaintiff could perform her PRW as a waiter. Plaintiff requests that the Court remand this matter for rehearing and additional VE testimony.

The Commissioner argues that the ALJ reasonably found no mental health impairments because no doctor opined that Plaintiff had any limitations due to her depression and anxiety. The Commissioner further argues that the ALJ reasonably discounted Dr. Subbureddiar's opinion because it was inconsistent with the treatment record, and that the ALJ reasonably relied on the VE's testimony that an individual limited to occasional overhead reaching could do the job of waiter. Finally, the Commissioner argues that substantial evidence supports the ALJ's conclusion that Plaintiff's testimony regarding her limitations was not reliable based on the objective medical evidence, conservative treatment record, and Plaintiff's ADL.

The Court concludes that the ALJ erred in finding that Plaintiff's medically determinable mental impairments were not severe at Step Two of the sequential evaluation process and failing to include any nonexertional limitations in the RFC assessment. This error impacted the ALJ's evaluation of Plaintiff's subjective symptom testimony and the hypotheticals posed to the VE. Consequently, the error was not harmless because it ultimately impacted the ALJ's Step Four nondisability finding. Because questions remain regarding whether in fact Plaintiff was disabled within the meaning of the SSA during the relevant time period, and because Plaintiff's subjective symptom testimony is best reassessed in light of the record as a whole, the Court finds that remand for further

administrative proceedings is appropriate.[4]

A. <u>Step Two Finding</u>

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). Basic work activities are "the abilities and aptitudes necessary to do most jobs" including:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6) Dealing with changes in a routine work setting.

20 C.F.R. § 140.1521(b). "To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice." *Orellana v. Astrue*, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing 20 C.F.R. §§ 404.1508; 416.908).

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290). Thus, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687

---

[4] Because the Court will remand this matter for further administrative proceedings on an open record, the Court declines to address the other issues raised by Plaintiff in her appeal.

(quoting SSR 85-28).

The Supreme Court has recognized that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen*, 482 U.S. at 153. However, an overly stringent application of the severity requirement violates the SSA by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994).

Here, the ALJ found that Plaintiff lacked a medically severe mental impairment at Step Two despite objective medical evidence from COPE consistently documenting Plaintiff's depression, anxiety, and PTSD, as well as Plaintiff's own testimony regarding her symptoms. In contrast to the ALJ's characterization of Plaintiff's mental health treatment as "infrequent and grossly conservative," the record documents that Plaintiff regularly attended appointments at COPE from the end of 2014 through the beginning of 2016. (AR 29). And, as this Court has observed, "[t]he fact that Plaintiff has had limited mental health treatment is not a sufficient sole reason to find that her mental impairments are not severe at Step Two." *Cook v. Colvin*, 2016 WL 3961710, at *5 (D. Ariz. July 22, 2016) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.")).

Further, while the ALJ noted that some of Plaintiff's exams revealed an anxious mood and blunt affect and others documented fair concentration, appropriate affect, normal speech, appropriate mood, and fair insight and judgment, the ALJ's decision ignores Plaintiff's repeated reports of symptoms including fear of leaving the house, nightmares, hearing voices, and believing spirits were out to get her and trying to trick her. (AR 29). Nothing in the record suggests that Plaintiff was malingering or exaggerating her mental health symptoms. *See Webb*, 433 F.3d at 688 ("there is no inconsistency between Webb's

complaints and his doctors' diagnoses sufficient to doom his claim as groundless under the de minimis standard of step two."). And, if the ALJ was unable to clearly determine the extent to which Plaintiff's mental health impairments affected her ability to work, the ALJ should have developed the record to further assess Plaintiff's nonexertional limitations and her ability to perform work existing in the national economy. *See Webb*, 433 F.3d at 687 (the ALJ has an affirmative duty to supplement the medical record to the extent that it is incomplete; "duty is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous.").

B. RFC

Plaintiff argues that even if her anxiety and depression are not severe at Step Two, the ALJ erred by failing to include any mental health limitations in the RFC. The Court agrees.

RFC is "the most [a claimant] can still do despite her limitations," and includes assessment of the claimant's "impairment(s), and any related symptoms, such as pain, [which] may cause physical and mental limitations that affect what she can do in a work setting." 20 C.F.R. § 404.1545(a)(1). The ALJ was required to assess Plaintiff's RFC based on all the record evidence, including medical sources, examinations, and information provided by Plaintiff. 20 C.F.R. §§ 404.1545(a)(1)–(3), 416.945(a)(1)–(3). Further, "[i]n determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe." *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

Here, although the ALJ found Plaintiff had mild limitations in each of the four areas of mental functioning under the Paragraph B criteria, the ALJ failed to include any nonexertional limitations in the RFC.[5] For example, the ALJ found Plaintiff would have

---

[5] The Court also notes that in making her analysis under the Paragraph B criteria, the ALJ cited solely to findings from Plaintiff's CE with Dr. Johnson and failed to note any of Plaintiff's treatment records from COPE. While Defendant contends that no treating physician opined as to any specific mental limitations, it also does not appear from the record that Plaintiff's mental health providers were ever asked to complete a mental RFC assessment.

mild limitation in following one to two-step instructions, answering and asking questions, using reason and judgment to make work-related decisions, cooperating with others, asking for help and responding to requests, and working at a consistent pace. (AR 27). The RFC reflects none of these findings, and the hypotheticals posed to the VE fail to account for how Plaintiff could perform her PRW as a waiter if these nonexertional limitations were included.[6] Moreover, the RFC does not include any mental limitations based on Plaintiff's testimony and wholly ignores Plaintiff's consistent and persistent reports of serious depression and anxiety symptoms including nightmares, auditory hallucinations, and fear of leaving her home.

In sum, the Court finds that the record "includes evidence of problems sufficient to pass the de minimis threshold of step two," *Webb*, 433 F.3d at 687, and "there is not the total absence of objective medical evidence necessary to preclude a step two finding of a 'severe' mental impairment." *Orellana*, 547 F. Supp.2d at 1174. Furthermore, even if Plaintiff's mental impairments are not severe at Step Two, the ALJ erred by failing to include any nonexertional limitations in the RFC assessment. *See Cook*, 2016 WL 3961710, at *7 (ALJ erred by failing to provide sufficient reasons to find plaintiff's mental impairments non-severe at Step Two and failing to consider mental impairments in determining RFC). Accordingly, the Court finds that this matter should be remanded for further administrative proceedings to continue the five-step sequential evaluation process.

## V. Remedy

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

---

[6] When the ALJ added a limitation to simple, unskilled work with only occasional contact with the public and coworkers, Sala testified such a person could not perform Plaintiff's PRW but could do other jobs. (AR 331–33). However, the ALJ did not make an alternate Step Five finding in this matter.

- 17 -

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, remand for an award of benefits is appropriate where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Even if those requirements are met, though, we retain 'flexibility' in determining the appropriate remedy." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

"[T]he required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* "In evaluating [whether further administrative proceedings would be useful, the Court considers] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04. "This requirement will not be satisfied if 'the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence in the record,' because '[t]hese are exactly the sort of issues that should be remanded to the

agency for further proceedings.'" *Brow-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler*, 775 F.3d at 1105).

Here, the Court finds remand for further administrative proceedings is appropriate. The ALJ erred in finding that Plaintiff's mental health impairments were non-severe at Step Two and failing to include any nonexertional limitations in the RFC. Consequently, issues remain regarding Plaintiff's RFC and her ability to perform work existing in significant numbers in the national economy during the relevant time period. However, although Plaintiff's depression and anxiety may be considered severe, this Court offers no opinion as to whether Plaintiff is disabled within the meaning of the Act. "The touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Brown-Hunter*, 806 F.3d at 495. Plaintiff's RFC and subjective symptom testimony are best reassessed in consideration of the entire record, and on remand the ALJ shall give further consideration to all of the previously submitted medical testimony and lay testimony and continue the sequential evaluation process to determine whether Plaintiff is in fact disabled. Additionally, the ALJ is required to consider all of Plaintiff's alleged impairments, whether severe or not, in the assessment on remand. SSR 86–8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations imposed by all of an individual's impairments, even those that are not 'severe.'").

"Viewing the record as a whole [this Court] conclude[s] that Claimant may be disabled. But, because the record also contains cause for serious doubt, [the Court] remand[s] . . . to the ALJ for further proceedings on an open record." *Burrell*, 775 F.3d at 1142. The Court expresses no view as to the appropriate result on remand.

### VI. Conclusion

In light of the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's decision is remanded back to an ALJ on an open record with instructions to issue a new decision regarding Plaintiff's eligibility for disability insurance benefits.

The Clerk of Court shall enter judgment accordingly and close its file on this matter.

. . .

Dated this 15th day of January, 2019.

Eric J. Markovich
United States Magistrate Judge